[Cite as *State v. Harris*, 2020-Ohio-805.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108529 |
| v. | : | |
| LARRY HARRIS, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 5, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-626290-B and CR-18-628031-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ben McNair and Tim Troup, Assistant Prosecuting Attorneys, *for appellee.*

Valore and Gordillo L.L.P., and Dean Valore, *for appellant.*

MARY J. BOYLE, P.J.:

**{¶ 1}** Defendant-appellant, Larry Harris, appeals his conviction.[1] He raises one assignment of error for our review:

> The trial court committed reversible error to the prejudice of the appellant by failing to comply with the requirements of Criminal Rule 11.

**{¶ 2}** Finding no merit to his assignment of error, we affirm.

## I. Procedural History and Factual Background

**{¶ 3}** In March 2018, in Cuyahoga C.P. No. CR-18-626290, the Cuyahoga County Grand Jury indicted Harris and his codefendants (Antwuan Harris, Dayvontae Jeffries-Hampton, and James Hampton) for aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree (Count 1); aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree (Count 2); kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree (Count 3); theft in violation of R.C. 2913.02(A)(1), felonies of the fifth degree (Counts 4 and 5); attempted aggravated robbery in violation of R.C. 2923.02 and 2911.01(A)(1), a felony of the second degree (Count 6); attempted aggravated burglary in violation of R.C. 2923.02 and 2911.11(A)(2), a felony of the second degree (Count 7); failure to comply in violation of R.C. 2921.331(B), a felony of the fourth degree (Count 8); receiving stolen property in violation of R.C. 2913.51(A), three of which were felonies of the fifth degree and one of which was a misdemeanor of the first degree (Counts

---

[1] This case is a companion case to the appeal in *State v. Harris*, 8th Dist. Cuyahoga No. 108528.

9 through 12); telecommunications fraud in violation of R.C. 2913.05(A), a felony of the fifth degree (Count 13); carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree (Count 14); and improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree (Count 15).[2] The counts for aggravated robbery, aggravated burglary, attempted aggravated robbery, and attempted aggravated burglary all carried one- and three-year firearm specifications as well as forfeiture specifications. The count for kidnapping and one of the counts for theft also carried one- and three-year firearm specifications, and the counts for carrying a concealed weapon and improperly handling firearms in a motor vehicle carried forfeiture specifications.

{¶ 4} In May 2018, in Cuyahoga C.P. No. CR-18-628031, a Cuyahoga County Grand Jury indicted Harris (and his codefendant, James Gevontea Hampton) for aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree (Count 1); aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree (Count 2); kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree (Count 3); and theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree (Count 4).[3] All of the counts carried one- and three-year firearm specifications.

---

[2] There were additional charges against his codefendants.
[3] Hampton was also charged with having weapons while under disability and carrying a concealed weapon (Counts 5 and 6, respectively).

{¶ 5}  At the plea hearing in August 2018, the state informed the court, in the presence of Harris and his counsel, that the parties had engaged in extensive negotiations and that the state proposed amending charges in both cases. In Case No. 626290, the state proposed amending the Count 1 to robbery in violation of R.C. 2911.02(A)(1), a felony of the second degree, and deleting the one-year firearm specification, and amending Count 6 to robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree, and deleting the three-year firearm specification. Harris would also plead guilty to Count 8 failure to comply, Counts 11 and 12 receiving stolen property, and Count 13 telecommunications fraud. The remaining charges would be nolled. In Case No. 628031, the state proposed amending Count 2 aggravated robbery to robbery in violation of R.C. 2911.02(A)(1), a felony of the second degree, and deleting the one-year firearm specification. The remaining charges would be nolled. In addition, Harris would need to forfeit a handgun and a replica handgun. The state further informed the court that the state and Harris were agreeing to a recommended sentence of ten years for both cases.

{¶ 6}  Defense counsel told the trial court that he and Harris had discussed the state's proposal and that Harris had given it serious consideration. The trial court explained to Harris that under the plea the state was offering, Harris would serve a full ten years in prison. Harris acknowledged that he understood the proposed amended offenses and that if he pleaded guilty he would serve the full ten years in prison.

COURT: You understand they're asking the Court to impose a ten-year sentence in prison here? Is that understood?

HARRIS: Yes, your Honor.

COURT: And that would not be reduced. Okay? Do you understand?

HARRIS: Yes, your Honor.

{¶ 7} On at least seven separate occasions, the trial court asked Harris if he understood that he would serve ten years in prison if he pleaded guilty, and Harris responded that he understood each time. The trial court also explained the constitutional rights that Harris would be waiving if he pleaded guilty and asked Harris at least five times if he understood. Harris answered in the affirmative each time. The trial court went through each of the state's proposed amendments, asked Harris's counsel if he objected (which he did not), and granted each amendment.

{¶ 8} The trial court went through each allegation and offense with Harris, explaining the minimum and maximum sentence and fine that each offense carried. Harris expressed his understanding after each offense. Harris confirmed that no threats or promises had been made to him to induce his plea except for the agreed recommended sentence of ten years in prison. Harris then pleaded guilty to the amended charges in both cases.

{¶ 9} The trial court, accepting the parties' agreed recommendation, sentenced Harris to an aggregate of ten years in prison for both Case No. 626290 and Case No. 628031. Specifically, in Case No. 626290, the trial court sentenced Harris to an aggregate of seven years as follows:

- three years for the firearm specification, to be served prior and consecutive to two years for Count 1 robbery;

- one year for the firearm specification to be served prior and consecutive to one year for Count 6 robbery, which is to be served concurrently to the two years for Count 1 robbery;[4]

- one year for Count 8 failure to comply, to be served consecutively to any other counts;

- one year each for both Counts 11 and 12 receiving stolen property and one year for Count 13 telecommunications fraud, to be served concurrently with each other and concurrently with the underlying offenses for robbery;

- mandatory three years of postrelease control for his robbery convictions and up to three years of discretionary postrelease control for failure to comply, receiving stolen property, and telecommunications fraud; and

- a suspended driver's license until August 31, 2030.

{¶ 10} In Case No. 628031, the trial court sentenced Harris to an aggregate of three years as follows:

- three years for the firearm specification, to be served prior and consecutive to the firearm specifications in Case No. 626290;

- two years for Count 2 robbery to be served concurrently with the underlying offenses for robbery in Case No. 626290; and

- mandatory three years of postrelease control.

---

[4] The trial court's journal entry reflecting Harris's sentence in Case No. 626290 does not include a statement that the robbery terms are to run concurrently, but the transcript reflects that the trial court told Harris that the robbery terms would run concurrently. Even though the sentences from the journal entry therefore add up to eight years, the journal entry explicitly states that it imposes a prison sentence of seven years for Case No. 626290, which added to the three-year sentence from Case No. 628031 aggregate to the ten-year agreed prison sentence.

The trial court instructed Harris that if he were to violate his postrelease control in either case, the parole board may impose a prison term of up to one-half of the prison term originally imposed. The trial court also waived Harris's costs and fines in both cases.

{¶ 11} It is from this judgment that Harris now appeals.

## II. Effect of Guilty Plea

{¶ 12} In his single assignment of error, Harris argues that the trial court committed reversible error by failing to ensure that Harris understood the effect of his guilty plea pursuant to Crim.R. 11(C)(2). We disagree.

{¶ 13} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). The underlying purpose of Crim.R. 11(C) is to ensure that the trial court conveys certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 14} We review whether the trial court complied with Crim.R. 11(C) de novo. *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26. In reviewing the record, appellate courts must consider the totality of the

circumstances to determine whether the plea hearing complied with Crim.R. 11(C). *Cardwell* at ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 15} Specifically, Crim.R. 11(C) states:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 16} Trial courts must strictly comply with the provisions concerning the constitutional rights set forth in Crim.R. 11(C)(2)(c), but only substantial compliance is required for the provisions concerning nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b). *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474, at 108.

{¶ 17} Harris challenges only the trial court's compliance with Crim.R. 11(C)(2)(b) regarding the effect of his guilty plea. Crim.R. 11(B)(1) sets forth the effect of a guilty plea: "The plea of guilty is a complete admission of the defendant's guilt." The trial court must have substantially complied with Crim.R. 11(C)(2)(b)'s requirement to inform Harris of and determine that Harris understood that by pleading guilty he would be making a complete admission of his guilt.

{¶ 18} Moreover, a defendant who challenges his or her plea on the basis that it was not knowingly, intelligently, and voluntarily entered must demonstrate prejudice. *Nero* at 108. A "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice." *Griggs* at ¶ 12. The test for prejudice is "whether the plea would have otherwise been made." *Id.*, citing *Nero* at 108.

{¶ 19} Harris argues that the trial court failed to substantially comply with Crim.R. 11(C) by not informing him of and determining that he understood the effects of his guilty plea. Harris points specifically to the following exchange during the plea hearing:

COURT:    Right. So we're here in two cases, one of them is *State of Ohio v. Larry Harris*. Mr. Harris, my understanding is that your attorney, Mr. Dumas, is that he's worked out a plea bargain on your behalf on these two cases and that you wish to take advantage of the plea bargain. Is that correct?

HARRIS:    Yes, your Honor.

COURT:    You understand by entering into a plea bargain, you're not going to have a trial on either case?

HARRIS:    Yes, your Honor.

COURT:    Also, by entering a change of plea from not guilty to guilty and take advantage of the plea bargain, do you understand you're accepting the allegations and you are relieving the state of its burden of proof?

HARRIS:    Yes, your Honor.

COURT:    Also, the parties are proposing that the Court would impose a recommended sentence of ten years. Do you understand that would be ten years in prison and that you would not have an early release?

HARRIS:    Yes, your Honor.

COURT:    Is that what you wish to do is enter into this plea bargain?

HARRIS:    Yes, your Honor.

{¶ 20} Harris argues that the above exchange failed to (1) ensure that he knew he would be found guilty of the offenses charged and would have a criminal record for the rest of his life, (2) did not tell him that "he would be found guilty," and (3) was so vague that it did not substantially comply with Crim.R. 11.

{¶ 21} Although the trial court did not explicitly inform Harris that the effect of his guilty plea "is a complete admission of [his] guilt," our review of the record reveals that Harris subjectively understood the effect of his guilty plea. Considering the totality of the circumstances, the record shows that the trial court's colloquy was not vague and that Harris understood that pleading guilty was a complete admission of his guilt. The court reviewed each allegation and offense with Harris and explained the possible maximum sentence for each and the rights that Harris was waiving. In response to multiple questions from the trial court, Harris stated that

he understood that by pleading guilty he would be going to prison for ten years. Harris then stated he was pleading guilty to each of the amended charges. Considering the totality of the circumstances, we find that the trial court ensured that Harris understood the effect of his guilty plea.

{¶ 22} Moreover, the trial court explained to Harris the constitutional rights that he would be waiving if he pleaded guilty. The trial court repeatedly asked Harris if he understood the constitutional rights he would be waiving by pleading guilty. In response, Harris repeatedly answered that he understood.

{¶ 23} We are not persuaded by Harris's arguments that he did not understand the effect of his plea because he is "young and inexperienced" with only a tenth-grade education. In *State v. Beckwith*, 8th Dist. Cuyahoga No. 75927, 2000 Ohio App. LEXIS 3162 (July 13, 2000), the defendant similarly argued that he did not knowingly, intelligently, or voluntarily plead guilty because of his "limited intelligence." This court disagreed, finding that the proceedings "were not so subtle that an eighteen-year-old with a ninth grade education would have had any trouble understanding." *Id.* at 8. Likewise, the guilty plea here was straightforward. Defense counsel and the state engaged in extensive negotiations before agreeing upon the plea and the ten-year sentence. Nor are we convinced that Harris did not understand the effect of his plea because he was taking medication at the time. Harris testified that he was taking a "low milligram of Remeron" for anxiety and depression. Nothing in the record supports that Harris was not able to understand

the effect of his plea at all, let alone due to his age, education level, or low dosage of anxiety medication.

{¶ 24} Even if we agreed that the trial court failed to substantially comply with explaining the effect of the plea to Harris, he did not prove that he was prejudiced by the court's failure. Other than his blanket assertion of prejudice, Harris provides no support or argument that he was prejudiced. Moreover, Harris does not claim that had the trial court better informed him of the effect of his plea, he would not have pleaded guilty.

{¶ 25} Further, Harris does not assert that he is actually innocent. The Ohio Supreme Court has held that a defendant is "presumed to understand that he has completely admitted his guilt" unless a defendant asserts "actual innocence." *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, syllabus. If a defendant does not claim "actual innocence," a "court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* The record contains no evidence of Harris asserting actual innocence at the time of his plea, and he does not raise actual innocence on appeal.

{¶ 26} Accordingly, we overrule Harris's only assignment of error.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
EILEEN A. GALLAGHER, J., CONCUR

Keywords: Crim.R. 11, effect of the plea

Summary:  The trial court complied with Crim.R. 11, and the record shows that Harris knowingly, voluntarily, and intelligently pleaded guilty.